UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY SUNG DMD, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF NEW JERSEY, *et al.*, <br><br> Defendants. | Civ. No. 17-11960 (KM) (MAH) <br><br> **MEMORANDUM OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Jeffrey Sung, *pro se*, brings this action against the State of New Jersey, the Hudson County Prosecutor's Office, the New Jersey Unclaimed Property Administration, and the New Jersey Attorney General's Office (collectively, the "State Defendants"), as well as the West New York Police Department, alleging breach of public trust and various civil rights violations.[1]

---

[1] Certain items from the record will be abbreviated as follows:

| | |
|---|---|
| "DE __" = | Docket Entry in this case |
| "Comp." = | Complaint (DE 1) |
| "West NY Mot." = | West NY Police Brief in Support of Motion to Dismiss the Complaint (DE 12-1) |
| "Opp. to West NY Mot." = | Plaintiff's Opposition to West NY Police's Motion (DE 14) |
| "NJ State Mot." = | Brief in Support of Motion to Dismiss the Complaint by Hudson County Prosecutor's Office, New Jersey Attorney General's Office, New Jersey Unclaimed Property Administration, and the State of New Jersey (DE 27-2) |
| "Opp. to NJ State Mot." = | Plaintiff's Opposition to the NJ Parties' Motion (DE 29) |

1

Defendants have moved to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The State Defendants also move to vacate the entry of default entered against them pursuant to Federal Rule of Civil Procedure 55(c). For the reasons explained in this opinion, I will grant the Defendants' motions and dismiss the Complaint.

## I. Factual Background

The Complaint alleges the following facts. For purposes of a Rule 12(b)(6) motion, the well-pleaded factual allegations of the Complaint are assumed to be true. *See* Section III.A, *infra*.

The Complaint is predicated upon sprawling conspiracy allegations involving the Chinatown mafia, New Jersey state court judges, the police, the plaintiff's previous lawyers, and others. The overview is that Sung entered into a series of business deals in the early 1990s whereby he provided capital to a group of small businesses through a promissory note and a share purchase agreement. Sung was not paid the amounts he was due, and unsuccessfully sued in state court in the early 1990s to recoup his losses. Thereafter, Sung spent roughly twenty years trying to rectify these alleged wrongs, only to be stymied by a purportedly corrupt group of state court judges, prosecutors, and others who allegedly threatened him in an attempt to deter him from pursuing his claims.

Plaintiff Jeffrey Sung is a dentist and resident of Wayne, New Jersey. (Comp. ¶¶ 6, 26). In 1989, Timothy Tuttle ("Tuttle"), Kung Chi Wong ("Wong"), and Hsing Tak Tong ("Tong") founded four corporations: Van Foo; Mr. Tong II; Van Lee; and Sing Lung (collectively, "the Four Corporations"). (Comp. ¶ 14). While the Complaint does not specify the nature of these businesses, it appears from the exhibits that the Four Corporations owned and operated Chinese restaurants, one of which was located in Fairfield, New Jersey, and another in East Rutherford, New Jersey. (Comp. Exh. A, B, pp. 22-23).[2]

---

[2] Sung attaches several documents to his Complaint. (*See* Comp. pp. 21-46). Because these documents are explicitly relied upon in the Complaint and incorporated

2

Tuttle, Wong, and Tong sold shares of the Four Corporations to Sung and took loans from Sung, but never transferred the shares to him and defaulted on the loan payments. (These transactions are referred to collectively as the "Business Deals".) (Comp. ¶ 14). The Complaint attaches excerpts of documents purporting to show the following: (1) Sung's 1989 purchase of five shares of Van Foo and Mr. Tong II for $50,000 (Comp. Exh. A, DE 1 p. 22); (2) Sung's 1990 purchase of three shares of Van Lee from Wong in 1990 for $40,000 (Comp. Exh. B, DE 1 p. 23); (3) Wong's pledge of five shares of Van Lee in 1989 to secure Sung's loan to him of $50,000 (Comp. Exh. C, DE 1 p. 24); and (4) Sung's 1990 mortgage loan to Van Foo of $50,000, secured by property in Fairfield (Comp. Exh. D, DE 1 p. 25).

Tuttle, Wong, Tong, and the Four Corporations, however, are not named as defendants in Sung's Complaint. Rather, Sung is suing a group of governmental entities, alleging corruption in connection with the disposition of his civil cases involving the Business Deals.

In 1990 Sung sued Wong in both Bergen County and Hudson County for not delivering the shares of Van Lee and Sing Lung and for defaulting on loan payments. (Comp. ¶ 14, Exh. E, F, G, DE 1 pp. 26-28). Through the mid-1990s, Sung continued to bring civil claims in New Jersey state court involving the Business Deals. (Comp. Exh. I, J, DE1 pp. 30-31). The resolutions are not always clear; Sung attaches scattered interrogatories and interlocutory orders. In 1996, Sung, proceeding *pro se*, sued the attorneys who represented him in some of the earlier litigation involving the Business Deals. That case did not proceed "due to discrimination." (Comp. ¶ 14, Exh. L, DE 1 p. 33).

---

by reference, the Court may consider them on a Rule 12(b)(6) motion. *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) ("[A] document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotations and citations omitted) (emphasis in original). Moreover, given Sung's status as a *pro se* litigant, I liberally construe the Complaint and refer to the attachments as a guide to understanding the alleged claims. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

3

In 1994, a state court judge ordered Van Foo and Mr. Tong II to "be dissolved into receivership," appointing Laura Scott as the receiver. (Comp. ¶ 17). The judge in that case allegedly ordered Van Lee and Sing Lung to be sold to the Chinatown mafia (the "Flying Dragons"), who were working for Tuttle, Wong, and Tong. (*Id.*). This led to the dissolution of the Four Corporations and the issuance of a judgment against Sung for $94,311, an amount which was seized from Sung and deposited into the Superior Court Trust Fund. (*Id.*). Receiver Scott and the state court have repeatedly denied Sung's requests for an accounting of the receivership. The most recent denial of Sung's request(s) to compel Receiver Scott to disclose the accounting occurred on April 3, 2017. (*Id.*; Comp. Exh. S, p. 40).

Sung's previous lawyers, Bergenfield and Pollack, "abandoned" him after all the assets were dissipated. (Comp. ¶ 18). Sung's lawyers, he says, were "actually working for Tuttle." (*Id.*). In 1997, Sung brought a new lawsuit, which a state court judge dismissed as being barred by the entire controversy doctrine due to the earlier suit. (*Id.*). That dismissal was predicated upon the motion of the defense counsel in that case, John Kennedy, who allegedly "distorted the motion to help Tuttle, Bergenfield, and Pollack, in collusion with" the state court judge presiding over that case. (*Id.*). Sung lists nine other cases involving the Four Corporations that were dismissed by state court judges. (*Id.*).

Between 1997 and 2017, Sung appealed those dismissals and filed several motions in an attempt to reopen those cases, all of which were denied. (Comp. ¶ 19). An order, entered in 2017, denied Mr. Sung's motion to "disclose accounting" in the 1994 case. (Compl. Exh. S, DE1 p. 40) The state court judges involved in the proceedings involving Sung allegedly "breached oaths and public trust, colluded and obstructed justice against Sung to help their own kind" and to help Tuttle perpetuate unspecified crimes. (*Id.*). With respect to these allegations, Sung seeks, *inter alia*, the return of the money he invested

in the Four Corporations, the $94,311 judgment he paid, disclosure of the receivership accounting for Van Foo and Mr. Tong II, and legal fees. (*Id.*).

When Sung commenced his civil cases in 1990, he also filed a criminal complaint against Tuttle, Wong, and Tong at the New Jersey Attorney General's Office ("AG's Office"), alleging that they had stolen $1 million and used the Flying Dragons to threaten people. (Comp. ¶ 21). The AG's Office had Assistant Prosecutor Mark Groninger of the Hudson County Prosecutor's Office investigate the allegations against Tuttle, Wong, and Tong. (*Id.*, Comp. Exh. Q, p. 38). Sung informed Groninger that Tuttle, Wong, and Tong were using the Flying Dragons to attack Sung and forcibly take over Van Lee and Sing Lung. Groninger allegedly "refused to investigate Tuttle" and instead "became an accomplice" of Tuttle. (Comp. ¶ 22). In 1994, Groninger allegedly "dismissed" an indictment against Wong, "using a secret motion, in a conspiracy with Tuttle" and the state court judge. (The order dismissing the indictment is attached, however. Comp. Exh. R, DE 1 p. 39.)

In 1994, Sung was "informed by confidential sources" that Tuttle was using his connections with the Hudson County Prosecutor's Office ("HCPO") and "local mobs" to harm Sung in an effort to prevent Sung from pursuing his claims against Tuttle, Wong, and Tong. (Comp. ¶ 23). That same year, "local drug gangs repeatedly attacked Sung outside his West New York dental office." (*Id.*). Sung attaches to his complaint a police report from June 1994 indicating that he was the victim of a robbery in which a man stole his briefcase. This report, he says, constitutes evidence of the repeated attacks on him by local gangs who wanted him to stop pursuing his claims against Tuttle, Wong, and Tong. (Comp. Exh. V, DE 1 p. 43). Sung asked the HCPO and the West New York Police ("WNYP") for protection, but both allegedly refused to help. (Comp. ¶ 23).

Sung also asked the WNYP in 1994 for protection, but Detective Edmund Comfort indicated to Sung that Comfort did not know who the attackers were or how to locate them. (Comp. ¶ 27). Sung notes in an attachment to his

Complaint that Detective Comfort later pled guilty to two conspiracy counts for his involvement in a corruption scheme. (Comp. Exh. W, DE 1 p. 44).

After none of the authorities would offer protection to Sung in the mid-1990s, Sung kept a gun in his West New York dental office and "hid a BB gun in his minivan for self-defense" to protect against future attacks. (Comp. ¶¶ 23, 28). Sung then supposedly found out that the groups that attacked him were "controlled and sent" by the WNYP. (*Id.*). Sung informed the FBI about this alleged misconduct. (*Id.*).

On July 22, 1994, while "recording [a] conversation with a 'hitman' sent by the HCPO" and WNYP, Sung was arrested in Hudson County. (Comp. ¶¶ 24, 27). During that arrest, the police searched Sung's car and found the BB gun hidden there. (*Id.*). As the basis for his arrest it was alleged that Sung was attempting to use the BB gun to kill Tuttle and that Sung was "trying to hire a hitman to kill Tuttle." (*Id.*). "HCPO then conspired with Sung's lawyer and coerced Sung" to plead guilty to possession of a weapon. (*Id.*). HCPO "refused to return" Sung's seized property, including his car. (*Id.*). HCPO also allegedly did not return the $50,000 bail money posted by Sung's brother. (*Id.*). Sung attaches an order entered in 2012, denying his motion to transfer venue of his criminal case; the order recites that Sung had been sentenced some 15 years previously, in 1997, and that no criminal matter was currently pending. (Comp. Ex. T, DE 1 p. 41)

HCPO purportedly was protecting Tuttle, a former prosecutor "with powerful friends and mob ties." (*Id.*). Sung summarizes the alleged wrongdoing of HCPO as follows: HCPO knew Tuttle, Wong, and Tong committed crimes but refused to arrest them because of Tuttle's connections; refused to investigate attacks against Sung; dismissed an indictment against Wong; and deliberately arrested Sung without probable cause. (*Id.*).

After Sung's arrest, the attacks on him stopped, but the WNYP never arrested any of his attackers. (Comp. ¶ 29). Consequently, Sung had to move

his dental office out of West New York. (*Id.*). Sung sues HCPO and WNYP for breach of public trust and civil rights violations. (Comp. ¶ 29).

Sung also seeks to reclaim property from the New Jersey Unclaimed Property Administration ("NJUPA"), which disbursed $126,784 to Mrs. Tuttle from the Van Foo and Mr. Tong II dissolution. The basis for the award was a mortgage note that the Tuttles allegedly fabricated. (Comp. ¶ 31).

With respect to the New Jersey AG's Office, Sung alleges that between 1990 and 2017 (the particular dates are not specified) he complained to their office several times about the crimes and corruption outlined above. (Comp. ¶ 35). However, the NJAG allegedly "refused to do anything because it too is corrupt." (*Id.*).

## II. Motion to Vacate Entry of Default

On July 20, 2018, the Clerk of the Court entered default against the State Defendants. (DE 13). The State Defendants now assert that good cause exists to vacate the entry of default pursuant to Federal Rule of Civil Procedure 55(c). (*See* NJ State Mot.). I agree that good cause exists and will vacate the entry of default.

"There is a distinction between a default standing alone and a default judgment. . . . Less substantial grounds may be adequate for setting aside a default than would be required for opening a judgment." *Feliciano*, 691 F.2d at 656. "Any doubt should be resolved in favor of setting aside the [entry of default] so that cases may be decided on their merits." *Id.*; *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (noting that the Third Circuit has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable."); *Beauty Plus Trading Co. v. Bee Sales Co.*, No. 15-8502 (ES) (MAH), 2017 WL 706604, at *2 (D.N.J. Feb. 21, 2017).

A motion to vacate default is governed by Fed. R. Civ. P. 55, which provides that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The decision to vacate default is left to the sound discretion of the district court. *Venus v. Polize, Inc.*, No. 16-679 (MAS) (LHG),

2017 WL 6626314, at *1 (D.N.J. Dec. 28, 2017). When deciding whether to vacate default, the court must consider three factors: (1) whether the non-defaulting party will be prejudiced if the default is lifted; (2) whether the defaulting party has a meritorious defense; and (3) whether culpable conduct of the defaulting party led to the default. *See Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982); *see also United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984); *Days Inns Worldwide, Inc. v. Devils Lake Hosp., Inc.*, No. 12-5022, 2013 WL 12302984, at *2 (D.N.J. May 22, 2013), *report and recommendation adopted*, No. 12-5022, 2013 WL 12302981 (D.N.J. June 21, 2013). I analyze those three Rule 55(c) factors in turn.

### 1. Whether the non-defaulting party will be prejudiced if the default is lifted

There is no particular prejudice to Sung here. No discovery has been taken in this case. There is no indication that, in the interim, any relevant evidence was lost, or anything occurred that would hinder Sung's presentation of his case, which is largely based on events from 20 years ago.

### 2. Whether the defaulting party has a meritorious defense

The State Defendants point to a meritorious defense. As discussed below, Sung has failed to set out a claim against the State Defendants for which relief can be granted. *See* Subsections III.B through III.D, *infra*.

### 3. Whether culpable conduct of the defaulting party led to the default

The State Defendants have filed a certification stating that their conduct was not a culpable cause of the entry of default. They attest that they did not respond because they were not properly served. (DE 27-3 ¶¶ 29-30, 36). Sung's attempted service was allegedly inadequate for two reasons: (a) as to HCPO, because the service by mail was initially invalid, and the subsequent recipient was not a person authorized to accept service (DE 27-3 ¶ 31), *see* Fed. R. Civ. P. 4(j)(2); and (b) as to the State Defendants, the attempted service by mail was initially invalid, and occurred outside the time permitted under Fed. R. Civ. P. 4(m) (90 days after filing the complaint). (DE 27-3 ¶¶ 32-34).

Interpreting the record in the light most generous to Sung, there is no indication that the State Defendants are guilty of anything more than negligence. *See Hritz v. Woma Corp.,* 732 F.2d 1178, 1183 (3d Cir. 1984) (noting that negligence does not satisfy the culpable conduct standard for vacating default). In particular, there are no indicia of willful or bad faith conduct on the part of the State Defendants, who moved to dismiss the Complaint and vacate the entry of default in January 2019. (DE 27).

Overall, the three factors weigh in favor of vacating the entry of default. Therefore, I will grant the State Defendants' motion to vacate default pursuant to Rule 55(c).

### III. Motion to Dismiss

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.,* 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey,* 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of [his or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank,* 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

Moreover, where the plaintiff, like Mr. Sung, is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

### B. Plaintiff's Alleged Causes of Action

Sung alleges a variety of claims. They may be summarized as follows: (1) civil rights violations under 42 U.S.C. § 1983 for false arrest, malicious prosecution, *Monell* municipal liability,[3] and due process violations; (2) civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (3) breach of public trust.[4]

In New Jersey, there is no standalone civil cause of action for "breach of public trust." Rather, it is a concept invoked in disciplinary proceedings. *See In*

---

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

[4] Sung also alleges several claims that do not provide a private civil cause of action. Those include (1) obstruction of justice; (2) accomplice and accessory liability; and (3) entrapment. These are criminal law concepts that do not provide civil private causes of action and are therefore dismissed. *See Bauerle v. U.S. Dep't of Health & Human Servs.*, 689 F. App'x 502, 503 (9th Cir. 2017) ("The district court properly determined that obstruction of justice was not a cognizable civil cause of action."); *Brookins v. Bristol Twp. Police Dep't*, 642 F. App'x 80, 81 (3d Cir. 2016) (affirming District Court's ruling that plaintiff could not bring a civil claim under Pennsylvania's criminal statute for obstruction of justice); *Maehr v. Koskinen*, No. 16-512, 2018 WL 1750476, at *2 (D. Colo. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 1406877 (D. Colo. Mar. 21, 2018) (noting that plaintiff's general allegation that defendant was an accomplice to the illegal conduct did not state a civil cause of action); *Pizzoferrato v. Tiberi*, No. 09-11531, 2011 WL 3857125, at *5 (D. Mass. Sept. 1, 2011) ("Courts have consistently held that while entrapment may be a proper

*re Czajkowski*, No. A-3141-04T2, 2005 WL 2806217, at *3 (N.J. Super. Ct. App. Div. Oct. 28, 2005) (explaining that breach of public trust justified disciplinary penalty imposed on public employee); *Exec. Comm'n on Ethical Standards v. Salmon*, 295 N.J. Super. 86, 101, 684 A.2d 930, 938 (App. Div. 1996) (describing breach of public trust as violative of the ethics rules for public employee).[5]

Under federal law, the phrase "breach of public trust" occurs as a description of the *subject* of free speech, the restriction of which may give rise to a First Amendment claim. *See Herman v. Harman*, 583 F. App'x 33, 34–35 (3d Cir. 2014) ("Speech is of public concern when it is 'fairly considered as relating to any matter of political, social, or other concern to the community[,]'" such as a breach of public trust) (citing *Connick v. Myers*, 461 U.S. 138, 146, 148, 103 S. Ct. 1684, 75 L.Ed.2d 708 (1983)); *Kimmett v. Corbett*, 554 F. App'x 106, 111–12 (3d Cir. 2014) (noting that if speech was not made pursuant to a public employee's official duties, the court must consider whether the employee spoke as a citizen on a matter of public concern, which could include a breach of public trust). It is not in itself, however, a cause of action.

Because Sung was not a public employee or otherwise asserting a claim that the government restricted his free speech, his claim for "breach of public trust" is dismissed for failure to state a claim. *See Norflo Holding Corp. v. City of Chicago*, No. 00-6208, 2002 WL 453605, at *9 (N.D. Ill. Mar. 25, 2002)

---

defense in a criminal case, it does not create a civil cause of action pursuant to Section 1983.") (collecting cases). The dismissal is with prejudice, because any repleading of these crimes as civil causes of action would be futile.

[5] There is also a separate concept of breach of public trust in New Jersey criminal law, whereby such a breach gives rise to a presumption against pretrial intervention eligibility. *See State v. Denman*, 449 N.J. Super. 369, 378 (App. Div. 2017). This criminal law concept is in no way relevant to Sung's complaint.

11

(dismissing claim because plaintiff "has not identified a cause of action under the Civil Rights Act or Illinois law. . . for breach of public trust.").

Still, because Sung is proceeding *pro se*, I will review the complaint liberally and determine whether its factual allegations set forth a plausible, viable cause of action.

## C. Statutes of Limitations

The motions to dismiss assert that the claims in the complaint are barred by the applicable statutes of limitations. The complaint in this action was filed on November 21, 2017. (DE 1)

Under the circumstances, this defense is properly considered on a Rule 12(b)(6) motion. The statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), and "[t]echnically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). However, on a Rule 12(b)(6) motion, a complaint may be dismissed on statute of limitations grounds "when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (Section 1983 case, citing *Schmidt*, 770 F.3d at 249); *see also Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017).[6]

---

[6] Where appropriate, a statute of limitations dismissal must consider the applicability of tolling doctrines. *See Wisniewski*, 857 F.3d at 157–58 (reversing dismissal and remanding for consideration of whether time spent in exhausting administrative remedies tolled the Section 1983 limitations period). Statutory tolling, under New Jersey law, may arise from bases specifically listed in the statute. *See, e.g.*, N.J. Stat. Ann. § 2A: 14–21 (minority or insanity); N.J. Stat. Ann. § 2A: 14–22 (non-resident defendant). Equitable tolling may be appropriate "where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass,' or where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." *Cason v. Arie Street Police Dep't*, No. 10-0497, 2010 WL 2674399, at *5 n. 4 (D.N.J. June 29, 2010) (citing *Freeman v. State*, 347 N.J. Super. 11, 31, 788 A.2d 867 (N.J. Super. Ct. App. Div. 2002)). No basis for statutory or equitable tolling is pled in the Complaint, and none is suggested by the circumstances.

12

### a. 42 U.S.C. § 1983

Section 1983 does not contain its own statute of limitations and instead borrows the limitations period from the law of the forum state, here New Jersey. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In New Jersey, Section 1983 claims are subject to the local two-year statute of limitations for personal injury claims, N.J. Stat. Ann. § 2A:14–2. *Patyrak v. Apgar*, 511 Fed. App'x. 193, 195 (3d Cir. 2013) (per curiam) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)).

The date when a cause of action under Section 1983 accrues is a matter of federal law. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Gentry v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (internal quotation marks and citations omitted). "As a general matter, a [§ 1983] cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 120 (1979)). Accrual occurs, then, "when a plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

Accrual may be delayed by a plaintiff's lack of knowledge of the facts. The threshold of knowledge, however, is not a high one. The tort accrues when the "plaintiff knows or has reason to know of the injury which is the basis of the [S]ection 1983 action." *Fullman v. Pa. Dep't of Corr.*, 265 F. App'x 44, 46 (3d Cir. 2008); *accord Kach*, 589 F.3d at 634. Accrual does not require that the plaintiff be aware of *all* the facts. *New Castle County v. Halliburton Nus Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997) (citing *Zeleznik v. United States*, 770 F.2d 20, 24 (3d Cir. 1985)). Nor need the plaintiff contemporaneously appreciate the legal ramifications of the facts. The required awareness is awareness of injury,

not appreciation that the injury constitutes a legal wrong. *See Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir. 1988).

Here, the complained-of conduct took place in the 1990s, and Sung unequivocally was aware of the injury at that time. *See* Section I, *supra*. For example, the Business Deals with the Four Corporations occurred in the early 1990s, and the attendant civil litigation took place throughout the remainder of the 1990s. Sung's arrest was in 1994. Groninger allegedly "dismissed" the indictment against Wong "using a secret motion, in a conspiracy with Tuttle" and the state court judge in 1994. The complaints Sung made to the WNYP and HCPO took place in the 1990s. The remainder of the allegations involve purported acts from the 1990s, and at the absolute latest, the early 2000s through 2007.[7]

There is no specific, actionable conduct identified in the complaint that occurred anytime within at least the last ten years—let alone the last two years—before the filing date of the Complaint on November 21, 2017. (DE 1). Consequently, the two-year statute of limitations for a Section 1983 suit bars Sung's claims for false arrest, malicious prosecution, due process violations, and *Monell* violations, and any other potential constitutional violation that may be extrapolated from the complaint.

### b. RICO

The statute of limitations for a civil RICO claim is four years from the time of the injury or the discovery of the injury. *Rotella v. Wood*, 528 U.S. 549, 554 (2000); *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 232 (3d Cir. 2004) (citing *Agency Holding Corp. v. Malley-Duff & Assoc. Inc.*, 483 U.S. 143, 156, 107 S. Ct. 2759 (1987)). As outlined above, Sung's Complaint

---

[7] To be sure, Sung alleges that as recently as 2017 he continued to lodge complaints about the conduct that had occurred in the 1990s, but received no satisfaction. Under the legal principles stated above, however, the cause of action became complete and the statute of limitations began to run many years before. A wrong does not become evergreen, or newly actionable, simply because the plaintiff continues to demand redress.

does not identify any culpable conduct occurring after November 21, 2013 (*i.e.*, four years prior to the November 21, 2017 filing date of this Complaint). Sung was contemporaneously aware of his alleged injuries at or about the time they occurred, long before 2013. Therefore, Sung's RICO claim is likewise time-barred.

### D. Failure to Plead a Claim

Timeliness aside, Sung has failed to meet the minimal pleading standards under Rule 8(a). Even a *pro se* complaint must give the defendants fair notice of what a plaintiff's claim is and the grounds upon which it rests. *See* Section II.A, *supra*; *Schulsinger v. Perchetti*, No. 15-5752, 2016 WL 475303, at *3 (D.N.J. Feb. 8, 2016). That has not been done here.

Throughout his Complaint Sung makes conclusory allegations of prosecutors and judges being "corrupt" and "cover[ing] up [Tuttle's] crime[s]," but he describes this corruption in only general terms. (Comp. ¶¶ 1-2). The operative theory is that Sung did not prevail in earlier actions, and therefore corruption must have been at work. That presumably could be alleged by any unsuccessful litigant; the Complaint fails, however, to plead any facts tending to demonstrate corruption or the existence of a conspiracy.

For example, Sung's suit against his former lawyers, Bergenfield and Pollack, was allegedly "never tried due to discrimination." No other relevant facts are pled. (Comp. ¶ 16). He allegedly "found out the drug gangs were controlled and sent by WNYP to attack him" but he does not describe who in particular was "controlled" by whom, or how he learned this information. (Comp. ¶ 28). The WNYP allegedly sent gangs to attack him "to help HCPO, Tuttle and Wong." (*Id.*). No facts are pled, however, to support an inference of conspiracy among those persons or entities. No facts are pled to support the conclusory allegation that WNYP was behind alleged "gang attacks" (which in any event are not described, except for one theft of a briefcase).

With respect to the allegation that Sung's brother posted $50,000 bail on Sung's behalf and this money was never returned, Sung has also failed to allege the details—even the brother's name—with specificity. The Complaint

15

does not state when his brother posted bond, the date or basis for the refusal to return the bond, or the steps taken, if any, to obtain review of any such denial. *See State v. Ventura*, 196 N.J. 203, 212, 952 A.2d 1049, 1054–55 (2008) (discussing the then-existent factors for bail forfeiture and remission).[8] Bonds are forfeited all the time, often because a person has failed to appear. If there is to be a claim here, facts making out some violation of federal law must be alleged.

A thorough review of the Complaint reveals no federal cause of action pled with a level of specificity sufficient to survive a Rule 12(b)(6) motion to dismiss. Consequently, even setting aside the statute of limitations, the Complaint is dismissed on the alternative ground of failure to state a claim.

## IV. CONCLUSION

For the reasons stated in this Opinion, Defendants' motions to dismiss and the State Defendants' motion to vacate the entry of default are GRANTED. The dismissal is based on the statutes of limitations and failure to state a claim; therefore, I need not reach the Defendants' arguments regarding, *inter alia*, sovereign immunity and the *Rooker-Feldman* doctrine. Because this is an initial dismissal, it is without prejudice to the filing of a properly supported motion to amend within 30 days.

An appropriate Order follows.

Dated: March 12, 2019

**HON. KEVIN MCNULTY, U.S.D.J.**

---

[8] There is a further issue of whether Sung has standing to complain of this alleged misconduct. His brother, not he, allegedly posted and lost the $50,000 in bail money. *See United States v. Garza*, 124 F. App'x 891, 893 (5th Cir. 2005) (affirming district court's denial of plaintiffs' motion for remission of bond forfeiture when plaintiffs were not the ones that posted bail because the plaintiffs "failed to demonstrate that they suffered an injury in fact sufficient to establish standing.").

16